KAREN P. HEWITT
United States Attorney
CHRISTINA M. McCALL
Assistant United States Attorney
California Bar Number 234139
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6760
Facsimile: (619) 235-2757

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUAN JOSE MIRANDA,<br><br>Defendant. | Criminal Case No. 08CR1005-H<br><br>**UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO:**<br><br>**(1) COMPEL DISCOVERY AND PRESERVE EVIDENCE AND**<br>**(2) GRANT LEAVE TO FILE FURTHER MOTIONS**<br><br>Date: May 19, 2008<br>Time: 2:00 p.m.<br>Honorable: Marilyn L. Huff |

Plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, and Christina M. McCall, Assistant United States Attorney, hereby files its Response and Opposition to Defendant's Motion for Discovery. This Response and Opposition is based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

///

///

I

**STATEMENT OF FACTS**

**A. Defendant's Criminal and Immigration Record**

Defendant, Juan Jose Miranda, is a 42-year-old citizen of Mexico. He has a very serious criminal record in the United States, despite lacking permission to even enter this country. Defendant was convicted of violating California Health and Safety code § 11377 in August of 1990 and received a 16 month state prison sentence. In August of 1994, Defendant was convicted of violating California Penal Code § 288.5, continuous sexual abuse of a child. He received a six year state prison sentence for that felony conviction. In May of 2004, Defendant was convicted of violating California Penal Code § 417.8, drawing and exhibiting deadly weapons (a steel bar and scissors) with the intent to prevent his arrest by a police officer. Defendant was sentenced to serve five years in state prison for that felony offense.

An immigration judge in San Diego ordered Defendant removed from the United States on July 22, 1988. Defendant was subject to a final administrative removal order on September 11, 1997. Defendant was removed through Calexico West port of entry on September 12, 1997. On February 1, 2001, Defendant was removed through the Calexico West port of entry, following his prison sentence. On December 6, 2007, Defendant was again removed from the United States, through San Ysidro port of entry.

**B. Defendant's Apprehension**

A few months after his removal to Mexico, Defendant was apprehended at the San Ysidro port of entry. Defendant walked into the pedestrian inspection area and told the officer that his identification documents were stolen in Mexico. Defendant claimed that he was a United States citizen who lived in San Ysidro. The inspector sent Defendant to the secondary inspection area for further processing. After identifying Defendant using the automated fingerprint system, officers learned of Defendant's criminal and immigration violation history and placed him under arrest for illegally attempting to re-enter the United States after deportation.

The agents informed Defendant that he was going to be prosecuted criminally, and that his administrative rights no longer applied. The agents read the Miranda warnings to Defendant, who elected to remain silent. No further questions relating to the offense followed. A check of immigration

databases revealed that no official permission was given to Defendant to re-enter the United States following his deportations.

On April 2, 2008, a federal grand jury for the Southern District of California returned a two-count Indictment against Defendant. Count one charges him with being an alien who attempted to enter the United States without the consent of the Attorney General or the Secretary of Homeland Security, after having been previously excluded, deported, or removed, in violation of Title 8 U.S.C. § 1326. The Indictment further alleged that Defendant was removed from the United States subsequent to May 6, 2004. Count two charges Defendant with making a false claim to United States citizenship, in violation of 18 U.S.C. § 911.

## II

## UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS

### A. ORDER COMPELLING DISCOVERY IS UNNECESSARY

No Order is Required; The United States is Complying With Discovery Obligations

The United States has produced over one hundred pages of discovery as of the filing of this response. Defense counsel has also received copies of the non-privileged documents from Defendant's A-file, except for the immigration judges order from . The United States has complied and will continue to comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500), and Federal Rule of Criminal Procedure 16. Because the United States has complied and will comply with its discovery obligations, an order to compel discovery is unwarranted and the request for such an order should be denied.

1. Defendant's Statements

The United States has already provided defense counsel with an incident report detailing his brief statements in primary inspection. Defendant invoked his right to remain silent, so there are no post-arrest statements to provide.

2. Arrest Reports, Notes and Dispatch Tapes

The United States has provided Defendant with the report related to Defendant's arrest in this case. The United States will continue to comply with its obligation to provide to Defendant all reports subject to Rule 16.

The Government has no objection to the preservation of the handwritten notes taken by any of the Government's agents that are available at this time. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the Government objects to providing Defendant with a copy of any available rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case probably do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

3. Brady Material

The United States will comply with its obligations to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963). Under Brady and United States v. Agurs, 427 U.S. 97 (1976), the government need not disclose "every bit of information that might affect the jury's decision." United States v. Gardner, 611 F.2d 770, 774-75 (9th Cir. 1980). The standard for disclosure is materiality. Id. "Evidence is material under Brady only if there is a reasonable probability that the result of the

proceeding would have been different had it been disclosed to the defense." United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001). Impeachment evidence may constitute Brady material "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks omitted).

4. Information that May Result in a Lower Sentence

The Government is unaware of any mitigating information in this case, and recognizes that Defendant's lengthy history of criminal and immigration violations is aggravating information.

5. Defendant's Prior Record

The United States has provided Defendant with a copy of all documents relating to Defendant's prior criminal record within the Government's possession, custody, or control and, consequently, has fulfilled its duty of discovery under Rule 16(a)(1)(D). See United States v. Audelo-Sanchez, 923 F.2d 129 (9th Cir. 1990). To the extent that the United States determines that there are any additional documents reflecting Defendant's prior criminal record, the United States will provide those to Defendant.

6. 404(b) and 609 Evidence

______The United States will disclose in advance of trial the general nature of any "other bad acts" evidence that it intends to introduce at trial pursuant to Federal Rule of Evidence 404(b), and any prior convictions it intends to use as impeachment pursuant to Rule 609. The discovery materials include charging and conviction documents from Defendant's state court criminal case.

7. Evidence Seized

______The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

The United States need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 583-84 (9th Cir. 1984).

8. Preservation of Evidence

The United States will preserve all evidence to which the defendant is entitled to pursuant to the relevant discovery rules. The United States objects to a blanket request to preserve all physical evidence. The physical evidence likely to be used in this case will consist of fingerprint exemplars gathered from Defendant. The fingerprint cards will be preserved. There are no other obvious items of physical evidence to preserve.

9. Henthorn Material

In advance of trial, the Government will arrange for agencies to conduct a review of the witnesses' personnel files, to determine if there is any information that could be used for impeachment of the witness.

10. Tangible Objects

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. If color photographs will be used at trial, Defendant will receive copies in advance.

11. Expert Witnesses

The United States will comply with Fed. R. Crim. P. 16(a)(1)(G) and provide Defendant with notice and a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Rules 702, 703, or 705 of the Federal Rules of Evidence.

12. Evidence of Bias or Motive to Lie

Defendant requests evidence showing bias motive to falsify or distort testimony. The United States recognizes its obligation to provide information related to the prejudice, bias or other motive to slant testimony of trial witnesses, as mandated in Napue v. Illinois, 360 U.S. 264 (1959). At this time, the United States is unaware of any prospective witness who is biased or prejudiced against Defendant or who has a motive to falsify or distort his or her testimony.

13. Impeachment Evidence

______The United States acknowledges its obligation to provide impeachment information about its witnesses that meets the relevant standard of materiality, i.e., "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." Blanco, 392 F.3d at 387. The United States has or will comply with its obligation.

14. Evidence of Criminal Investigation of Government Witness

______The United States recognizes and will comply with its obligations under the case law and discovery rules to disclose exculpatory information and impeachment information. To the extent such disclosures are not required by the case law and rules, the United States opposes Defendant's broad request for evidence of any disciplinary investigations into prospective witnesses by federal, state or local authorities, regardless of the outcome of the investigations. Moreover, as discussed above, the United States has no obligation to disclose information not within its possession. See United States v. Gatto, 763 F.2d 1040, 1048 (9th Cir. 1985); United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files outside of federal prosecutor's possession); United States v. Chavez-Vernaza, 844 F.2d 1368, 1375 (9th Cir. 1987) (the federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control); cf. Beavers v. U.S., 351 F.2d 507 (9th Cir. 1965) (Jencks Act refers to "any statement" of a witness produced by United States which is in possession of United States and does not apply to a recording in possession of state authorities).

15. Evidence Affecting Perception and Memory

The United States is unaware of any evidence that any government witness's physical ability to perceive, recollect or communicate or commitment to tell the truth is impaired. The United States opposes the request for information that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic. This request is overly broad and ignores the standard of materiality set forth in Brady for exculpatory or impeachment information.

16. Jencks Act Material

The United States has or will comply with the disclosure requirements of the Jencks Act. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or

otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). By the same token, rough notes by an agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

The United States is not aware of any dispatch tapes containing Jencks Act material in this case.

17. Giglio Information

The United States will comply with the requirements of Giglio v. United States, 405 U.S. 150 (1972).

18-20. Informants and Cooperating Witnesses

At this time, the United States is not aware of any confidential informants or cooperating witnesses involved in this case. The government must generally disclose the identity of informants where (1) the informant is a material witness, or (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). These threshold requirements have been interpreted to require that, if any cooperating witnesses or informants were involved or become involved, Defendant must show that disclosure of the informer's identity would be "relevant and helpful" or that the informer was the sole percipient witness before he would even be entitled to an in-camera evidentiary hearing regarding disclosure of the informer's identity. United States v. Jaramillo-Suarez, 950 F.2d 1378, 1386-87 (9th Cir. 1991), quoting Roviaro v. United States, 353 U.S. 53, 60 (1957). Any bias issues will be handled pursuant to Brady.

21. Inspection and Copying of A-file

The Government is providing a copy of all discoverable documents taken from Defendant's A-file.

22. Residual Request

As stated above, the United States will comply with its discovery obligations in a timely manner.

III

**UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY**

Defendant has invoked Fed. R. Crim. P. 16(a) and the United States has voluntarily complied with the requirements of Rule 16(a). Therefore, provision 16(b) of that rule, requiring reciprocal discovery, is applicable. The United States hereby requests Defendant to permit the United States to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Defendant and which he intends to introduce as evidence in his case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of Defendant, which he intends to introduce as evidence-in-chief at the trial or which were prepared by a witness whom Defendant intends to call as a witness. The United States also requests that the court make such orders as it deems necessary under Rule 16(d)(1) and (2) to insure that the United States receives the discovery to which it is entitled.

Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of all witnesses, except Defendant. The time frame established by the rule requires the statement to be provided after the witness has testified, as in the Jencks Act. The United States hereby requests that Defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the court. This order should include any form these statements are memorialized in, including but not limited to, tape recordings, handwritten or typed notes and/or reports.

IV

**MOTION TO COMPEL FINGERPRINT EXEMPLARS**

As part of its case, the United States must prove that Defendant was previously deported from the United States. To prove this element, the United States anticipates calling a certified fingerprint examiner to testify that Defendant is the individual whose fingerprint appears on the warrants of deportation and other deportation documents. A number of chain of custody witnesses could be eliminated, and judicial resources conserved, by permitting the Government's expert to take

Defendant's fingerprints himself. The Defendant's fingerprints are not testimonial evidence. See Schmerber v. California, 384 U.S. 757 (1966). Further, using identifying physical characteristics, such as fingerprints, does not violate Defendant's Fifth Amendment rights against self-incrimination. United States v. DePalma, 414 F.2d 394, 397 (9th Cir. 1969); Woods v. United States, 397 F.2d 156 (9th Cir. 1968); see also, United States v. St. Onge, 676 F. Supp. 1041, 1043 (D. Mont. 1987). Accordingly, the Government requests that the Court order that Defendant make himself available for fingerprinting by the Government's fingerprint expert.

**V**

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that Defendant's motions, except where not opposed, be denied and the United States' motion for reciprocal discovery and fingerprint exemplars be granted.

DATED: May 12, 2008

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

***/s/ Christina M. McCall***

CHRISTINA M. McCALL
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JUAN JOSE MIRANDA,<br>Defendant. | Case No. 08CR1005-H<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED that:

I, CHRISTINA M. McCALL, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101.

I am not a party to the above-entitled action. I have caused service of RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

John Ellis

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 12, 2008.

/s/ Christina M. McCall
CHRISTINA M. McCALL